# IN THE COURT OF APPEALS OF IOWA

No. 20-1625
Filed November 3, 2021


**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LUIS A. CRUZ,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Story County, Amy M. Moore, Judge.


        Luis Cruz appeals the sentences imposed upon his convictions relating to conduct when he was a juvenile. **SENTENCES VACATED AND REMANDED WITH INSTRUCTIONS.**


        Chad R. Frese of Kaplan & Frese, LLP, Marshalltown for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.


        Considered by Mullins, P.J., May, J., and Danilson, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MULLINS, Presiding Judge.**

Luis Cruz appeals the sentences imposed, following guilty pleas,[1] upon his criminal convictions relating to crimes he committed when he was sixteen years old. He argues the sentencing court abused its discretion by improperly weighing and considering the sentencing factors for youthful offenders.

## I.      Background Facts and Proceedings

In conjunction with his guilty plea, Cruz admitted entering the residence of an eighty-two-year-old woman with two others, M.B.[2] and J.J., with the intent to commit theft. The trio sprayed the woman in the eye with bug spray and one of the others began beating the woman while Cruz held her. The woman was also tied up. The spraying, beating, and tying resulted in serious injuries—protracted and prolonged loss of eye function, bleeding of the brain, and rope burns. They also stole property from the residence, Cruz stealing a watch.

According to a sworn statement by M.B. that was admitted as evidence at the sentencing hearing, he and Cruz visited J.J.—who was high on methamphetamine—to obtain drugs, and the pair consumed alcohol and drugs (not methamphetamine) during the evening in question. The three then went to Kelley, Iowa to get money. They eventually ended up at the victim's residence—which J.J. advised was occupied by his family—and entered the garage, upon which J.J. handed the other two gloves to put on. M.B. "could just tell it was not going to be good, like, the outcome of whatever was about to go down." J.J. also

---

[1] The State agrees Cruz has good cause to appeal because he is challenging the sentences imposed as opposed to his pleas. *See* Iowa Code § 814.6(1)(a)(3) (Supp. 2019); *State v. Damme*, 944 N.W.2d 98, 105 (Iowa 2020).

[2] M.B. is Cruz's cousin.

obtained a can of bug killer before entering the residence. The trio approached a window in the rear of the residence, and J.J. directed M.B. to go cause a distraction around the front of the home, so M.B. went and rang the doorbell. When he returned to the rear of the home, J.J. and Cruz had already entered through a window. Then, M.B. heard a woman screaming. After a few minutes of silence, M.B. entered the home and, upon entry into the living room, observed J.J. and Cruz hovering over the victim, who was seated on the couch and had blood dripping from her face. J.J. eventually tied the victim to a chair and began making demands to the victim and ordered Cruz and M.B. to "look after her" and "watch her" while he looked for things throughout the house. M.B. also observed J.J. slap the victim across the face. Mortified, M.B. exited the home, and Cruz followed suit shortly thereafter. J.J. directed the others to wait for him outside and give him a few more minutes. Both Cruz and M.B. were "in shock." J.J. eventually came out, and the trio ultimately left the area in a vehicle, which J.J. had the keys to and advised the others belonged to his grandfather.

In relation to the foregoing, Cruz entered guilty pleas to several charges. A presentence investigation report (PSI) was completed and a psychologist interviewed Cruz and submitted an expert report. The PSI disclosed his age; his unstable family and home environment that involved criminally-inclined, drug-using, and domestically violent relatives and others as well as a largely absent father; his own alcohol and drug abuse; lack of education and employment history; and mental-health issues. The expert report assessed "the five factors to be considered in the sentencing process" for youthful offenders—"age of offender and youthful behavior, family and home environment, circumstance of crime,

challenges for youthful offenders and possibility of rehabilitation/capacity for chance." As to age and youthful behavior, the report detailed Cruz's criminal history, drug abuse, behavioral issues, and exposure to negative influences. The report also detailed Cruz's family and home life surrounding his youth. As to the circumstances of the crimes, the report noted Cruz "was drunk and high and just went along with the peers that he was with at the time. . . . [I]t was impulsive and unplanned and [] he regrets it." As to challenges for youthful offenders, the report noted Cruz has never been given an opportunity to participate in substance-abuse or mental-health services, education was never emphasized, and there was no structure or discipline in the family home. As to Cruz's possibility for rehabilitation and capacity for change, the report noted Cruz was taking advantage of services offered by the criminal justice system and he wants to be a better person and citizen in the future.

The PSI recommended Cruz be sentenced to indeterminate terms of imprisonment not to exceed twenty-five years on counts two and three, ten years on count four, and five years on count seven, all to be served concurrently. Based on her consideration of the sentencing factors, the psychologist recommended Cruz's sentence involve a mandatory minimum term of imprisonment for eight years. The State recommended that, between negligible and overwhelming mitigative value, the *Lyle* factors be accorded weight "somewhere in the middle." The State highlighted Cruz's age, the challenges he faced in relation to his family and home environment, the fact that he was a follower as opposed to the ringleader as to his participation in the crimes, his lack of personal experience in navigating the criminal justice system, and the hope that Cruz had a capacity to change. The

State recommended imposition of indeterminate terms of imprisonment not to exceed twenty-five years on count two with a mandatory minimum of eight years, twenty-five years on count three, ten years on count four, and two years on count seven, all to be served consecutively. The defense concurred with the State's recommendation.

In announcing its sentencing decision, the court noted its consideration of the expert report and detailed its assessment of the *Lyle* factors. In considering Cruz's "age at the time of the offenses and the feature of youthful behavior such as immaturity, impetuosity, and failure to appreciate risks and consequences," the court concluded the crimes were impulsive and "[t]he evidence supports the contention that [Cruz is] less able to appreciate the risks and consequences" of his criminal acts. The court found this factor to be "slightly mitigating at best." The court found Cruz's home and family life to also be "slightly mitigating at best." As to "the circumstances of the particular crime relating to youth that may have played a role in the commission of the crime[s]," the court found this factor more relevant given the fact that the crimes were committed by a group, but the court concluded the crimes were "utterly heinous" and, while Cruz was under the influence, he still knew what he was doing was wrong and peer pressure did not play a role. The court likewise found this factor "slightly mitigating at best." Considering "the challenges for youthful offenders in navigating through the criminal justice process," the court acknowledged juveniles are less competent than adults, but concluded Cruz appeared to be able to assist in his own defense. The court assigned this factor no mitigative value. Considering the "possibility of rehabilitation and the capacity for change, the court agreed "[t]his factor typically

favors mitigat[ion] because juveniles are generally more capable of rehabilitation than adults." The court found this factor "somewhat mitigating." The court went on to note its consideration of other statutory sentencing factors.

Ultimately, the court sentenced Cruz to indeterminate terms of imprisonment not to exceed twenty-five years on count two with a mandatory minimum of seventeen and one-half years, twenty-five years on count three, ten years on count four, and two years on count seven, all to be served consecutively. Cruz appeals.

## II.     Standard of Review

"If the sentence imposed is within the statutory limits, as it is here, we review for an abuse of discretion." *State v. Majors*, 940 N.W.2d 372, 385 (Iowa 2020).

> A discretionary sentencing ruling . . . may be [an abuse of discretion] if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case.

*Id.* (quoting *State v. Roby*, 897 N.W.2d 127, 138 (Iowa 2017)). "Sentencing decisions of the district court are cloaked with a strong presumption in their favor." *Id.* at 385–86 (quoting *State v. Crooks*, 911 N.W.2d 153, 171 (Iowa 2018)). "[O]ur task on appeal is not to second guess the decision made by the district court, but determine if it was unreasonable or based on untenable grounds." *State v. Seats*, 865 N.W.2d 545, 553 (Iowa 2015) (quoting *State v. Formaro*, 638 N.W.2d 720, 724–25 (Iowa 2002)). That said, "while the review is for abuse of discretion, it is not forgiving of a deficiency in the constitutional right to a reasoned sentencing decision based on a proper hearing." *Roby*, 897 N.W.2d at 138. "[T]here is a

presumption against minimum terms of incarceration for juvenile offenders." *Majors*, 940 N.W.2d at 387. For juvenile offenders, district courts are allowed "to impose minimum terms of incarceration after a complete and careful consideration of the relevant mitigating factors of youth. Indeed, we [have] stated that if the mandatory minimum period of incarceration is warranted, we command[] our judges to impose the sentence." *Id.* at 386 (altered for readability).

## III.    Analysis

On appeal, Cruz argues the sentencing court abused its discretion by improperly weighing and considering the sentencing factors for youthful offenders. Those factors are:

> (1) the age of the offender and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the particular "family and home environment" that surround the youth; (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime; (4) the challenges for youthful offenders in navigating through the criminal process; and (5) the possibility of rehabilitation and the capacity for change.

*Id.* at 379 (quoting *State v. Lyle*, 854 N.W.2d 378, 404 n.10 (Iowa 2014)); *accord Miller v. Alabama*, 567 U.S. 460, 477–78 (2012).

Cruz argues: "There was not a complete and careful consideration on any one of the five [youthful offender] factors, specifically because the sentencing judge either failed to discuss relevant evidence or ignored relevant evidence when analyzing each factor—which if properly analyzed would have resulted in more mitigative weight." *See Roby*, 897 N.W.2d at 144 (noting "the factors generally serve to mitigate punishment, not aggravate punishment").

We choose to begin with the court's consideration of the third factor, the circumstances of the crime. Cruz complains the court abused its discretion in concluding peer pressure did not play a role. On this factor, "attention must be given to the juvenile offender's actual role and the role of various types of external pressure" and, thus, "this factor is particularly important in cases of group participation in a crime." *Id.* at 146. Under this factor, the court acknowledged its duty to "consider the circumstances of the particular crime relating to youth that may have played a role" and Cruz's "actual role in these crimes and the role any type of external pressure may have played." The court noted its conclusion the group crime was "utterly heinous," and went on to assign this factor slight mitigative value despite Cruz being under the influence, because he knew what he was doing and peer pressure did not play a role.

But the record before the sentencing court discloses peer pressure did play a role. Specifically, the expert concluded Cruz was under the influence "and just went along with his peers," Cruz "wasn't really thinking," he was influenced by an older co-defendant, and he was not the ringleader. At the plea hearing, Cruz stated his participation in the crimes was initiated by one of his-codefendants asking him for his assistance at the time of the crimes. The sworn account provided by M.B. confirms the foregoing. J.J. took Cruz and M.B. to a home he advised belonged to a relative. Neither of the latter two participants knew what was going to happen. The record discloses, once in the home, J.J. directed Cruz to hold the victim, with which Cruz complied, and J.J. proceeded to assault the victim. Then, J.J. directed Cruz and M.B. to look after the victim while he searched for items to steal. And

Cruz being under the influence no doubt made him more susceptible to peer pressure.

The sentencing factors for youthful offenders

cannot be applied detached from the evidence from which they were created and must not be applied solely through the lens of the background or culture of the judge charged with the responsibility to apply them. Perceptions applicable to adult behavior cannot normally be used to draw conclusions from juvenile behavior.

*Roby*, 897 N.W.2d at 147. Here, the sentencing court's conclusion that peer pressure played no role in Cruz's participation was detached from the evidence, resulted in this factor not receiving the mitigative value it was entitled, and was therefore an abuse of discretion.

Next, we focus on the district court's analysis of the fifth factor and its explanation for imposing the maximum mandatory minimum:[3]

Under the fifth factor, I must consider the possibility of rehabilitation and the capacity for change. This factor typically favors mitigating because juveniles are generally more capable of rehabilitation than adults.

I like to think that this factor also would weigh in your favor, sir, but I am troubled by the limited amount of empathy that you have shown for [the primary victim] and the other victims of these offenses.

However, you are still a young adult. You will continue to experience developmental changes well into your twenties. Taken as a whole then, I find this factor to be somewhat mitigating.

In addition to these factors that I have just discussed, I must also consider deterrence, retribution, and incapacitation. In

---

[3] *See* Iowa Code §§ 702.11(1) (including felonious robbery as a forcible felony); 703.1 (criminalizing aiding and abetting); .2 (criminalizing joint criminal conduct); 711.2 (classifying first-degree robbery as a class "B" felony); 902.9 (directing the maximum sentence for a class "B" felony shall be no more than twenty-five years); .12(1)(e) (requiring a person serving a sentence for first-degree robbery to be denied parole or work release until service of seventy percent of the maximum sentence, which is seventeen and one-half years for a maximum sentence of twenty-five years); *Majors*, 940 N.W.2d at 386 (noting mandatory minimums are only allowed "after a complete and careful consideration of relevant mitigating factors of youth." (quoting *Roby*, 897 N.W.2d at 148).

considering all of the sentencing options available to me provided under the Iowa Code, my judgment relative to sentence is based upon all of the permissible factors that I have just discussed.

And in determining a sentence for you, I have also considered your education, your prior criminal history, prior employment, nature of the offense committed, and the harm to the victim, facts upon which the charge was based, whether a weapon or force was used in the commission of the offense, the need to protect the community, the State and defense counsel's recommendation to the Court, the recommendation of the presentence investigations report, your statements here today, your character, propensities and needs and potential for rehabilitation, the need to deter you and others similarly situated to you from committing offenses of this nature, your substance abuse history, and other permissible factors that are supported by the record.

In *Roby*, our supreme court explained the fifth factor and the potential use of expert testimony:

> The final factor is the possibility of rehabilitation and the capacity for change. This factor supports mitigation for most juvenile offenders because delinquency is normally transient, and most juveniles will grow out of it by the time brain development is complete. Additionally, juveniles are normally more malleable to change and reform in response to available treatment. The seriousness of the crime does not alter these propositions. Thus, judges cannot necessarily use the seriousness of a criminal act, such as murder, to conclude the juvenile falls within the minority of juveniles who will be future offenders or are not amenable to reform. Again, *any such conclusion would normally need to be supported by expert testimony*.

*Id*. at 147 (altered for readability) (emphasis added).

More recently, the supreme court decided the case of an incarcerated adult who was resentenced years after having been sentenced for a crime he committed while a minor and again addressed the use of an expert's opinion:

> Under the fifth factor, the sentencing court must consider the possibility of rehabilitation and the capacity for change. This factor typically favors mitigation because juveniles are generally more capable of rehabilitation than adults. Here, the district court appropriately gave weight to *expert testimony on Majors' lack of empathy and remorse from his initial arrest to the present*. And the

district court properly considered Majors' prison disciplinary violations, which as Dr. Clemmons explained were not attributable to his youth because he continued to accrue violations as an adult. Even at age thirty-three, and on the same day as his 2018 resentencing, Majors committed another disciplinary violation. The record supports the district court's determination that the fifth factor is, at best, "weakly" mitigating for Majors.

*Majors*, 940 N.W.2d at 390 (altered for readability) (emphasis added).

In the present case, a Ph.D. psychologist provided expert opinions by written report, offered by the State and admitted into evidence at the sentencing hearing. The report shows the expert reviewed records in the case, interviewed Cruz, and focused on the five factors to be considered in sentencing a youthful offender. The report states:

> [Cruz] is trying to take advantage of any classes and treatment that he can while incarcerated. He does think that he needs substance-abuse treatment and could benefit from anger management classes. He reports that these things were not suggested, recommended or imposed on him previously and there were not opportunities to complete treatment.

The report indicates Cruz has taken classes while incarcerated "and plans to take more"; he "wants to do positive things and his parents are supportive"; "he has plans for the future to get a job, continue school, develop a positive and structured routine and resist negative influences"; "he does believe that he needs classes for substance abuse and anger management and that it is hard to change without positive support and help." "He reported feeling bad after the crimes and 'being mentally messed up.' He felt guilty and his conscience was eating him up . . . . He wants to be a better person and citizen in the future."

The expert's conclusion was:

> [T]he examiner recommends a mandatory minimum of eight years and believes that [Cruz] is able to make positive and substantial

changes if he takes advantage of the opportunities in the corrections system. He has verbalized a desire to change and move forward and recognize his past issues and how several things contributed to his behavior.

The PSI recommended incarceration for Cruz, with all sentences to run concurrently, and made no reference to a mandatory minimum. The State recommended the same mandatory minimum of eight years as the expert, but added a recommendation for consecutive sentences not to exceed 62 years. Defense counsel recommended a mandatory minimum of eight years and a lengthy indeterminate term, and said Cruz "asks the Court to address how very sorry he is that he has been involved in this offense." When Cruz was asked if he wanted to make a statement, he said:

> Yeah. I just would like to apologize to the victim and the victim's family. Nothing I say can take back the physical and emotional damage that I have caused; but I just hope that one day everybody that this has affected, that I can be forgiven one day. I will come out a changed man.

We do not find any information in the record to support the district court's conclusion that it was "troubled by the limited amount of empathy that you have shown for [the primary victim] and the other victims of these offenses." Cruz's statement quoted above certainly does not. And the expert's report stated, "He reported feeling bad after the crimes and 'being mentally messed up.' He felt guilty and his conscience was eating him up . . . . He wants to be a better person and citizen in the future." The court did not indicate why it rejected Cruz's statement or the expert's report of his feelings of guilt.

Consistent with the supreme court's directives, an expert witness reviewed the records in this case and interviewed Cruz before giving her opinions. *See,*

*e.g.*, *Roby*, 897 N.W.2d at 147.  A sentencing court's decision to impose on a youthful offender the highest mandatory minimum allowed by law normally requires expert testimony in support of that decision.  *Id.*

In this case, the expert made clear she recommended incarceration but with a minimum term of incarceration of eight years because she believed Cruz "is able to make positive and substantial changes if he takes advantage of the opportunities in the corrections system.  He has verbalized a desire to change and move forward and recognize his past issues and how several things contributed to his behavior."  The district court made no mention of the expert's opinion while announcing its sentencing decision.  Thus, the court provided no reasons for ignoring the expert's opinion and imposing a minimum sentence greater than twice that recommended by the expert.  Clearly, the court was not bound by the expert's opinion.  But, equally clear from *Lyle* and the line of cases following that decision is there is a presumption against minimum terms in sentencing youthful offenders.  Based on the evidence, that presumption was overcome, at least to the extent of eight years.[4]  Further, in our focus on the fifth factor—"the possibility of rehabilitation and the capacity for change"—we note a sentencing court may not use only the seriousness of the crime as a factor to support a minimum sentence but must rely on expert testimony or some other reliable evidence to conclude the offender has limited possibility of rehabilitation or is not amenable to change.  *Id.*  The district court gave the typical, somewhat standardized list of rationale for

---

[4] This conclusion is based on the evidence presented in this case and is not intended to suggest an expert must recommend a specific term of incarceration or that the district court is limited in the exercise of its discretion to any particular recommendation by an expert.

imposing its sentence but, in youthful offender cases, we think our supreme court's decisions require—at the least—reference to the expert's opinion and some rationale for rejecting the expert's stated optimism for Cruz's prospects for rehabilitation. Instead, there was no reference to the expert, at all.

On the sentencing record, and in particular the reasons given by the district court for imposing the mandatory minimum sentence, we conclude the district court failed to give sufficient (any) weight to the expert opinion, failed to rebut or even acknowledge the expert opinion, failed to state it concluded Cruz was not likely to be rehabilitated and not malleable for change or any reason why that factor did not weigh in the decision, as well as apparently disregarding the other mitigative factors it identified but of which it made no reference in its sentencing rationale.

To be clear, we understand the deference given to district court judges in making sentencing decisions. And, sentencing decisions are cloaked with a presumption the district court properly exercised its discretion. But, youthful offender cases clearly have some different layers: the presumption against mandatory minimums, the five factors to consider in evaluating possible mitigation, the preference or necessity of expert opinion, and the analysis of all those layers in the sentencing decision. Without the benefit of the district court's identification or rejection of any of the mitigative factors in its sentencing decision on the mandatory minimum, we cannot determine whether they were properly applied. Without the benefit of the district court's reference to or rejection—if that is what it did—of the expert's opinion, we have nothing to review on the question of rehabilitation. And with the court's finding Cruz showed no remorse, without reference to the source or reason for that conclusion, and record evidence to the

contrary from Cruz and the expert, the record does not support a conclusion the court properly exercised its discretion in ordering the mandatory minimum sentence it imposed. Therefore, we conclude the imposition of the maximum term of imprisonment allowed by law was an abuse of discretion.

Accordingly, we vacate the sentences imposed and remand for resentencing before a different judge.[5] We find it unnecessary to separately address whether the court abused its discretion in considering the remaining factors, as the court abused its discretion in considering the third and fifth factors in reaching its sentencing decision concerning the mandatory minimum.

## IV. Conclusion

We conclude the district court abused its discretion in relation to the third and fifth sentencing factors for juvenile offenders, and abused its discretion in its analysis and conclusion to impose the maximum mandatory minimum sentence. We vacate the sentences imposed and remand for resentencing before a different judge.

**SENTENCES VACATED AND REMANDED WITH INSTRUCTIONS.**

---

[5] Our role in determining whether the district court abused its discretion is just that—no more, no less—as set forth above in our standard of review. Our role is not to decide what the sentence should be—whether maximum or minimum or something in between. We offer no opinion as to what sentence the district court on remand should impose.